IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAMELA J. WRIGHT | * |
|     Plaintiff, | * |
| v. | *   Case No. CIV-20-780-G |
| NEWVIEW OKLAHOMA, INC. | * |
|     Defendant. | |

**COMPLAINT AND PRAYER FOR JURY TRIAL**

Pamela J. Wright sues NewView Oklahoma, Inc. and alleges:

**INTRODUCTION**

1. Defendant NewView Oklahoma, Inc. ("NewView") is a nonprofit corporation headquartered in Oklahoma City that, according to its website, "seeks to empower blind and vision impaired individuals to achieve their maximum potential through rehabilitation, employment, and community outreach." NewView prides itself on being the largest employer of blind and visually impaired individuals in Oklahoma.

2. From November 2008 until July 2019, Plaintiff Pamela J. Wright, who is blind, was the public face of NewView. She was employed by NewView as a Community Access Specialist and, later, as Physician Marketing & Community Outreach Coordinator. In those positions, Ms. Wright traveled across the state to speak with doctors, civic groups, and at senior living centers and senior expos about the services NewView offers to blind and low vision Oklahomans. Ms. Wright was tremendously successful and almost singlehandedly grew the number of referrals NewView received per year from 150 to more

1

than 700. That is, until NewView demoted and then fired her because: (a) it no longer wanted to provide her with the reasonable accommodations she required to perform her job; and (b) she had complained about NewView's discrimination against her and NewView's other blind employees.

3. Ms. Wright seeks equitable relief and damages, including compensatory and punitive damages, for NewView's discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 and 12203, and Oklahoma state law, Okla. Stat. tit. 25 §§ 1302 and 1601.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Ms. Wright's claims under the ADA pursuant to 28 U.S.C. § 1331 (federal question). This Court has subject matter jurisdiction over Ms. Wright's claims under Oklahoma state law pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction) because those claims arise out of the same nucleus of operative fact and form part of the same case or controversy as her claims under the ADA.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because NewView maintains its principal place of business in this district and because all of the events giving rise to Ms. Wright's claims occurred in this district.

## PARTIES

6. Plaintiff Pamela J. Wright is a resident of Norman, Oklahoma. Ms. Wright was born sighted but began losing her sight as an adult. In 1997 she was diagnosed with

retinitis pigmentosa, a degenerative eye disease that leads to vision loss. She has been legally blind ever since.

7. Defendant NewView Oklahoma, Inc. is a non-profit corporation that maintains its principal place of business at 501 N. Douglas Avenue, Oklahoma City, Oklahoma 73106. It was founded in 1949 and until 2009 was known as the Oklahoma League for the Blind. Today, NewView employs and provides a variety of rehabilitation services to individuals who are blind or who have vision impairments at two locations in Oklahoma, one in Oklahoma City and one in Tulsa. As a National Industries for the Blind affiliated agency and an AbilityOne-member agency, NewView produces personal protective equipment, fire hoses, first-aid kits, shower curtains, and military rations, among other things, for the federal government and private industry. Although almost all of NewView's manufacturing staff are blind or have visual impairments, all of its executive leadership and the overwhelming majority of its management and rehabilitation staff are sighted.

## FACTS COMMON TO ALL COUNTS

8. In 1997, Ms. Wright was diagnosed with retinitis pigmentosa and she has been legally blind since that time. Before that, she spent much of her career as a certified medical assistant and a surgical scrub technician at an obstetrics and gynecology practice in Norman, Oklahoma, where she also worked as the office manager.

9. Following her diagnosis, Ms. Wright opened a case with the Oklahoma Department of Rehabilitation Services ("ODRS") and learned to use screen reading software called ZoomText. Screen reading software makes text displayed on digital

platforms (*e.g.*, websites, e-mails, text messages, etc.) accessible to blind individuals by converting it to audio output, Braille on a refreshable Braille display, or by enlarging the text and presenting it with enhanced contrast. She enrolled at the University of Central Oklahoma with the goal of completing her bachelor's degree in sociology and psychology.

10. In 2008, Ms. Wright was introduced to Cathy Holden, an Orientation and Mobility Specialist at NewView. Ms. Holden quickly recognized the value of Ms. Wright's experience in the medical profession and her can-do attitude. Ms. Holden asked Ms. Wright to send over her resume and in November 2008, Ms. Wright was hired to handle intake calls from prospective clients and to help them open cases and resolve disputes with ODRS. Ms. Wright also helped NewView's clients and other blind employees access social services in the community.

11. Ms. Wright quickly moved up through the ranks at NewView. In early 2009 she was promoted to Community Access Specialist. In December 2011 she was promoted to become NewView's first Physician Marketing & Community Outreach Coordinator. In those positions, Ms. Wright was the public face of NewView. With the assistance of a driver, arranged and paid for by NewView as a reasonable accommodation, she traveled across the state and met with doctors to make sure they were aware of the services NewView could provide their patients. She also spoke to civic organizations like the Lions Club and Rotary Club, church groups, and at senior living centers and senior expos. Ms. Wright even traveled to Washington, D.C. to represent NewView in meetings with members of Congress about employment, transportation, and community access for blind individuals.

12. Ms. Wright excelled at her job. She spearheaded numerous relationships for NewView and opened new lines of communication between NewView and referral sources across the state. During her tenure she grew the number of referrals NewView received each year from 150 to more than 700 and, on information and belief, her efforts increased NewView's revenue significantly.

13. Ms. Wright also loved her job and the opportunity it provided to meet people and make connections that would benefit blind Oklahomans. Despite her sense of fulfillment and her skill in building NewView's marketing practices, Ms. Wright had a nagging sense that she was being underpaid. After nearly a decade of employment with NewView and notwithstanding her notable successes, she was still earning just $35,000 per year. For comparison, according to NewView's 2017 tax return, its CEO, who is sighted, was paid more than $215,000.

14. NewView typically announces raises for its employees in December of each year and in December 2017, Ms. Wright asked Ms. Holden for a modest salary increase to $45,000. Ms. Holden said she would check with NewView's CEO but returned the next day with disheartening news. NewView's CEO denied Ms. Wright's request and, in addition, said that Ms. Wright would never rise above her then-current position or make more money while she was employed at NewView because she is blind. Even though Ms. Wright's performance reviews were nearly perfect, according to NewView's CEO she would only receive cost of living adjustments to her salary going forward. At the time (and, on information and belief, to this day), the majority of NewView's leadership, including its senior managers, were sighted, and few, if any, individuals who were blind made more

than $45,000 per year. In fact, most of NewView's blind employees make far less than Ms. Wright did.

15. On or about June 20, 2019, Ms. Wright was in a meeting with a well-known source of referrals to NewView when she was unexpectedly summoned to a meeting in the board room at NewView's clinic. When she arrived, she was surprised to see Masumi Ward, NewView's Director of Human Resources, and Ronita Jones, Senior Director of Clinical/Rehabilitation Operations who became Ms. Wright's supervisor after Ms. Holden sadly passed away in July 2018.

16. As the meeting began, Ms. Ward and Ms. Jones told Ms. Wright that she was doing a wonderful job for NewView by increasing the number of referrals it was receiving and that there were no issues with her performance. Despite that, Ms. Ward and Ms. Jones informed Ms. Wright that she was being removed from her position as Physician Marketing & Community Outreach Coordinator and that going forward she would be grounded and would only work from NewView's office location making follow up calls to NewView clients and helping clients and NewView's blind employees access social services in the community. Ms. Ward and Ms. Jones instructed Ms. Wright to cease her outreach efforts immediately, including any contact with the myriad of doctors' offices and other businesses that she had cultivated as reliable referral partners for NewView.

17. Ms. Wright stated her opposition to the decision and asked for an explanation. Ms. Ward and Ms. Jones told her that the decision had been made by NewView's upper management to address what they described as NewView's increasing "financial problems." That explanation made no sense, however, because: (a) Ms. Wright's

pay and benefits were going to remain the same after her reassignment; and (b) Ms. Jones and Ms. Ward told Ms. Wright that someone else would be taking over her duties as Physician Marketing & Community Outreach Coordinator.

18. Ms. Jones and Ms. Ward refused to tell Ms. Wright who her replacement would be or whether that person was blind or sighted. Ms. Wright explained that she had serious concerns about a sighted person taking over her position because if that were the case (and it was), it suggested that NewView was treating her unfairly because she could not drive.

19. Toward the end of the meeting, Ms. Wright asked Ms. Ward and Ms. Jones to reconsider the decision. They said they would not, that the decision had already been made, and that if Ms. Wright would not accept the change, she would lose her job all together. Faced with that ultimatum, Ms. Wright reluctantly agreed to the demotion.

20. Soon after her meeting with Ms. Ward and Ms. Jones, Ms. Wright learned, as she feared, that her old position as Physician Marketing & Community Outreach Coordinator had been filled by a sighted person who was less qualified than Ms. Wright. Indeed, the person who replaced Ms. Wright had only previously worked as a medical coding and billing specialist and a receptionist; she did not have any of the on-the-job experience in marketing that Ms. Wright had developed.

21. NewView also confirmed Ms. Wright's suspicion that she had been demoted because she cannot drive. On July 10, 2019, Ms. Jones sent a text message to Ms. Wright informing her that NewView would no longer pay for a driver and that NewView was "insisting that we cut back on travel expenses as much as we possibly can." Because having

access to reliable transportation enabled her to fulfill the essential functions of her job before her demotion (*e.g.*, executing a marketing strategy and growing the number of referrals NewView was receiving) and after (*e.g.*, assisting NewView's clients navigating the ODRS system and helping NewView's blind employees access social services), Ms. Wright was understandably upset by the news. In her response to Ms. Jones, Ms. Wright pointed out NewView's discrimination against its blind employees and questioned how NewView expected her to continue to perform her job: "Totally seems like we are becoming very inequitable when it comes to people who cannot drive. First, I lose a job I worked so hard to get and do by my very very best. Then, it is given to a sighted person. . . . So I'm being punished because I cannot see to drive? . . . I can't do my job when you continue to take things away from me."

22.     In the same exchange, Ms. Wright also objected to NewView's discriminatory pattern and practice of keeping her and its other blind and visually impaired employees out of upper management or "upper brass" positions, as they are referred to at NewView.

23.     Instead of reassuring Ms. Wright that NewView would work with her to find alternative reasonable accommodations or addressing Ms. Wright's concerns about NewView's discrimination against its blind and visually impaired employees, Ms. Jones's response was essentially this: if Ms. Wright didn't like NewView, she should leave. Ms. Wright had no idea that just two weeks later NewView would make that decision for her.

24.     On July 24, 2019, Ms. Wright was summoned to another unscheduled meeting with Ms. Jones, Ms. Ward, and NewView's Chief Operating Officer, Ben Knolles.

They explained that Ms. Wright's employment was being terminated as part of what they called a "reduction in force" required by NewView's supposed financial problems. Ms. Wright asked why, if that were true, NewView filled her old position with a sighted individual. Ms. Jones, Ms. Ward, and Mr. Knolles refused to answer and none of them made any effort to engage in an interactive process to discuss alternative accommodations that would have enabled Ms. Wright to continue performing her duties without the need for NewView to pay for a personal driver.

25. After her termination, Ms. Wright learned that NewView fired 12 other individuals the same day that it fired her, all but three of whom are blind or have visual impairments.

26. Ms. Wright's termination has completely disrupted her life. In addition to the loss of income, it has caused her significant emotional pain, suffering, and mental anguish including depression, anxiety, and sleeplessness.

27. Ms. Wright timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on December 30, 2019. On May 13, 2020, the EEOC issued Ms. Wright a notice of her right to sue, which she received on or about June 2, 2020.

## CAUSES OF ACTION

### COUNT I
### Discrimination in Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12112

28. Plaintiff incorporates each of the foregoing allegations as if fully restated herein.

29. Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

30. Among other things, discrimination includes:

   a. "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability;" 42 U.S.C. § 12112(a)(3)(A),

   b. "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would pose an undue hardship on the operation of the business of such covered entity;" 42 U.S.C. § 12112(b)(5)(A) and,

   c. "denying employment opportunities to a job applicant or an employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(B).

31. Ms. Wright is a "qualified individual" because she can, and did, perform all of the essential functions of her positions at NewView with reasonable accommodations. 42 U.S.C. § 12111(8).

32. NewView discriminated against Ms. Wright by capping her ability to advance within the organization because she is blind and by demoting and then firing her to avoid providing her with reasonable accommodations, including transportation to take her to work events. After Ms. Wright was demoted, NewView filled her position with a less qualified sighted person who did not require any accommodations. Ms. Wright met all of NewView's expectations throughout her employment and its decisions were not based on her job performance.

33. NewView also discriminated against Ms. Wright by firing her and several of her blind colleagues as part of a supposed "reduction in force." The standards, criteria, or methods of administration that NewView employed in deciding to terminate ten blind or visually impaired individuals as part of its "reduction in force" (out of 13 total) had the effect of discriminating against them on the basis of their disabilities.

34. Ms. Wright seeks relief in the form of back pay and front pay, as well as compensatory damages for NewView's discrimination. Ms. Wright also seeks punitive damages based on NewView's malicious conduct and reckless indifference towards her and her rights under the ADA. In addition, NewView is liable for the court costs, reasonable attorneys' fees, and expenses that Ms. Wright has incurred in the prosecution of this matter.

**COUNT II**
**Retaliation in Violation of the Americans with Disabilities Act**
**42 U.S.C. § 12203**

35. Plaintiff incorporates each of the foregoing allegations as if fully restated herein.

36. The ADA makes it unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful" by the ADA. 42 U.S.C. § 12203(a).

37. NewView discriminated against Ms. Wright by firing her because she challenged and opposed her demotion from Physician Marketing & Community Outreach Coordinator, a reassignment she correctly understood was discriminatory, as well as NewView's pattern and practice of discriminating against her and its other blind employees.

38. Ms. Wright seeks relief in the form of back pay and front pay, as well as compensatory damages for NewView's discrimination. Ms. Wright also seeks punitive damages based on NewView's malicious conduct and reckless indifference towards her and her rights under the ADA. In addition, NewView is liable for the court costs, reasonable attorneys' fees, and expenses that Ms. Wright has incurred in the prosecution of this matter.

**COUNT III**
**Discrimination in Violation of Okla. Stat. tit. 25 § 1302**

39. Plaintiff incorporates each of the foregoing allegations as if fully restated herein.

40. It is unlawful under Oklahoma law for an employer "to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of . . . disability, unless the employer can demonstrate that accommodation for the disability would impose an

undue hardship on the operation of the business of such employer." Okla. Stat. tit. 25 § 1302.A.1.

41. It is also unlawful under Oklahoma law for an employer to "limit, segregate, or classify an employee . . . in a way which would . . . adversely affect the status of the employee, because of . . . disability . . . ." Okla. Stat. tit. 25 § 1302.A.2.

42. NewView discriminated against Ms. Wright by capping her ability to advance within the organization because she is blind and by demoting and then firing her to avoid providing her with reasonable accommodations, including transportation to take her to work events. After Ms. Wright was demoted, NewView filled her position with a less qualified sighted person who did not require any accommodations. Ms. Wright met all of NewView's expectations throughout her employment and its decisions were not based on her job performance.

43. NewView also discriminated against Ms. Wright by firing her and several of her blind colleagues as part of a supposed "reduction in force." The means by which NewView classified its employees and the standards, criteria, or methods of administration that NewView employed in deciding to terminate ten blind or visually impaired individuals as part of its "reduction in force" (out of 13 total) had the effect of discriminating against them on the basis of their disabilities.

44. Ms. Wright seeks relief in the form of back pay and front pay, as well as compensatory damages and punitive damages for NewView's discrimination. In addition, NewView is liable for the court costs, reasonable attorneys' fees, and expenses that Ms. Wright has incurred in the prosecution of this matter.

## COUNT IV
## Discrimination in Violation of Okla. Stat. tit. 25 § 1601

45. Plaintiff incorporates each of the foregoing allegations as if fully restated herein.

46. It is unlawful under Oklahoma law for a person "to retaliate or discriminate against a person because [s]he has opposed a discriminatory practice." Okla. Stat. tit. 25 § 1601(1).

47. NewView discriminated and retaliated against Ms. Wright by terminating her employment because she challenged and opposed her demotion from Physician Marketing & Community Outreach Coordinator to, a reassignment she correctly understood was discriminatory, as well as New View's pattern and practice of discriminating against its other blind employees.

48. Ms. Wright seeks relief in the form of back pay and front pay, as well as compensatory and punitive damages for NewView's discrimination. In addition, NewView is liable for the court costs, reasonable attorneys' fees, and expenses that Ms. Wright has incurred in the prosecution of this matter.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court:

A. Declare that NewView violated the Americans with Disabilities Act by discriminating against her on the basis of her disability and by retaliating against her for her opposition to NewView's discriminatory conduct;

B.     Declare that NewView violated Oklahoma law (Okla. Stat. tit. 25 § 1302.A and Okla. Stat. tit. 25 § 1601(1), respectively) by discriminating against her on the basis of her disability and by retaliating against her for her opposition to NewView's discriminatory conduct;

C.     Award Plaintiff back pay and front pay pursuant to 42 U.S.C. § 2000e-5(g);

D.     Award Plaintiff back pay and an equal amount as liquidated damages, as well as compensatory and punitive damages, pursuant to Okla. Stat. tit. 25 § 1350.G;

E.     Award Plaintiff compensatory and punitive damages based on NewView's violations of the Americans with Disabilities Act pursuant to 42 U.S.C. § 1981a;

F.     Award Plaintiff pre- and post-judgment interest on all amounts owed as allowed by law pursuant to 28 U.S.C § 1961;

G.     Award Plaintiff the reasonable attorneys' fees and costs incurred in prosecuting this action pursuant to 42 U.S.C. § 12117, 42 U.S.C. § 2000e-5(k), and Okla. Stat. tit 25 § 1350.H;

H.     Award Plaintiff any such other and further relief as the Court deems just and proper.

s/Mark Hammons<br>
Mark Hammons<br>
Hammons, Hurst & Associates<br>
325 Dean A McGee Avenue<br>
Oklahoma City, Oklahoma 73102<br>
T: (405) 235-6100<br>
F: (405) 235-6111<br>
amberashby@hammonslaw.com

Regina Kline (*pro hac vice* to be filed)<br>
Kevin D. Docherty (*pro hac vice* to be filed)<br>
BROWN, GOLDSTEIN & LEVY, LLP<br>
120 E. Baltimore Street, Suite 1700<br>
Baltimore, Maryland 21202<br>
T: (410) 962-1030<br>
F: (410) 385-0869<br>
rkline@browngold.com<br>
kdocherty@browngold.com

Dated: August 7, 2020                                *Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action.

s/Mark Hammons<br>
Mark Hammons